## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MANUEL A. WILLIS,

      Petitioner,

v.                                  Case No: 8:13-CV-560-T-30TBM

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS and FLORIDA
ATTORNEY GENERAL,

      Respondents.

_____/

### ORDER

Petitioner, an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1).  The Court has considered the petition, Respondent's response (Dkt. #16), and Petitioner's Reply (Dkt. #25).  Upon review, the Court determines that the Petition should be denied.

### Background

Willis brings this Petition challenging his trial based convictions for lewd or lascivious battery in violation of Florida Statute § 800.04, three counts of lewd and lascivious molestation in violation of Florida Statute § 800.04, traveling to meet a minor in violation of Florida Statute § 847.1035, six counts of promoting a sexual performance by a child in violation of Florida Statute §827.071, and possession of child pornography in

violation of Florida Statute §827.071. The events leading to the arrest began when the Pinellas County Sheriff's Office received a report that a female juvenile had some type of sexual activity with a forty-two or forty-three year old man who had traveled from Georgia to Florida at least two times.

Around April 5th, 2009, the victim's father reported the relationship between the victim and the forty-two or forty-three year old man to the Pinellas County Sheriff's Office after questioning the victim about her many out of state phone calls. The Sheriff's Office's investigation revealed that that the man who had been travelling to Pinellas County from Georgia was Manuel Willis. (Dkt. # 18, Ex. 1C p.230). The Sheriff's Office set up a controlled phone call between the victim and Willis. During this call, Willis informed the victim that he would be sending her a cell phone through the mail (Dkt. #18, Ex. 1C, p.233). The victim's father reported that a package had arrived for the victim and gave it to the Sheriff's office (Dkt. #18, Ex. 1C p.173). The Sheriff's department opened the package, placed two more controlled calls from the cell phone to Willis, and began using the victim's email account to communicate with Willis. Through these communications, the Sheriff's Department arranged for Willis to travel near the victim's school to meet up with her on June 1st, 2009 (Dkt. #18 p.236). The Sheriff's Office arrested Willis when he attempted to meet with the victim near her school on June 1st, 2009.

After he was taken into custody, Willis was transported to the Sheriff's Office to be interviewed. Willis was read his Miranda rights and asked if he understood them, to which he responded yes (Dkt. #18, Ex. 1D, p. 276-77). During his interview, Willis admitted to making contact with the defendant via an online chat-room. Willis also admitted picking

up the defendant in February, taking her to the beach, kissing her, and fondling her breast during his three day stay in Florida. Willis returned to Georgia after the third day, but stayed in contact with her until his next visit. (Dkt. #18, Ex. 1D p.286-9, 292-97).

Willis said he returned to Florida in March of 2009 for three days so he could surprise the victim (Dkt. #18, Ex. 1D p. 298). Willis admitted that he left Georgia around noon, and arrived at 10:00pm because he was pulling into rest stops. He said he couldn't sleep in the rest stops because he was wired due to the coffee he had been drinking (Dkt. #18, Ex. 1D 333-34). The victim invited him to her home after he picked her up from school, and they went to her bedroom. Willis admitted that he kissed her, took her clothes off, received and performed oral sex, and digitally penetrated her. (Dkt. #18, Ex. 1D p. 301-05). Willis also admitted to taking naked photos of the victim on his iPhone (Dkt. #18, Ex. 1D p. 307). After this visit in March, Willis e-mailed the victim and arranged to meet her in June, the attempted meeting in which he was arrested in Florida. (Dkt. #18, Ex. 1D p. 313).

**Procedural History**

Willis appealed his conviction to the state appellate court and argued one point: "reversal for a new trial is warranted based upon prosecutorial misconduct which denied appellant a fair trial." (Dkt. #18, Ex. 2.). The state appellate court per curiam affirmed without a written opinion on March 16th 2011. *Willis v. State,* 57 So. 3d 859 (Fla. 2d DCA 2011).

Willis filed a *pro se* state court motion for post conviction relief on January 26th, 2012 alleging two grounds of ineffective assistance of counsel:

1.) counsel failed to preserve for review denial of pretrial motion to suppress evidence illegally seized, and

2.) counsel failed to raise and argue a Miranda violation in obtaining confession from defendant while in police custody. (Dkt. #18 Ex. 6)

The state post-conviction court summarily denied both grounds for post-conviction relief. On the first ground, the court ruled that Willis no longer had an expectation of privacy in the package he sent to the victim once the victim had received it. Therefore, counsel could not be deemed to be ineffective for failing to file a meritless motion.

On the second ground, the court ruled that Willis's claim was factually incorrect and without merit. Willis was factually incorrect because his counsel had filed a motion to suppress alleging that Willis's waiver of his Miranda rights was improper. The trial court denied the motion to suppress. Counsel is not ineffective for making a losing argument.

The Defendant appealed the trial court's denial of the motion to suppress, and the state appellate court affirmed the trial court's decision. The post-conviction court concluded that counsel did properly preserve the issue for appeal (Dkt. #18 Ex. 7). The state appellate court per curiam affirmed the denial of Willis's motions for post-conviction relief without a written opinion. *Willis v. State*, 104 So. 3d 1100  (Fla. 2d DCA 2012).

Willis timely filed this 28 U.S.C. §2254 petition for writ of habeas corpus on February 28th, 2013(Dkt. #1) raising three claims for relief:

1)  prosecutorial misconduct denied petitioner sixth amendment right to a fair trial

2)  counsel was ineffective in failing to raise and argue illegal search and seizure

3) trial Court erred in denying pretrial motion suppress statements made by petitioner during custodial treatment.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) has established a highly deferential standard for reviewing state court judgments *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). The statute states in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> 1.) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2.) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C § 2254(d)

The United States Supreme Court has explained that a state court's decision is "contrary to" clearly established Federal law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003). This highly deferential standard is difficult to meet. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (U.S. 2011). When reviewing factual determinations, the state court is presumed to be correct

and the applicant has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**Discussion**

Petitioner brings three claims, each which will be discussed separately.

**Prosecutorial Misconduct Denying Right to Fair Trial**

Petitioner claims that he was denied a fair trial when the prosecutor made improper statements to the jury during closing arguments. Willis claims that the prosecutor improperly expressed a personal opinion during closing arguments, and made a "send a message" argument to the jury to find the Petitioner guilty, thereby violating his 6th Amendment right to fair criminal trial. This claim is procedurally barred because Willis did not preserve his constitutional argument. He did not any constitutional arguments related to this claim before the state appellate court.

Even if the claim were not procedurally barred, it would fail on the merits. In a constitutional analysis, a habeas corpus petitioner must show a prosecutor's comments made the trial so biased he was denied due process. *Darden v. Wainwright,* 477 U.S. 178, 181 (1986), quoting, *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). A remark must be considered in the context of the whole evidence presented at trial. *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th. Cir. 1980).

There are two comments that Willis claims violated his constitutional right to a fair trial. The first comment was made during the opening remarks when the prosecutor said, "After he sat there and he bragged about his conquests over this little girl, he looked at Detective Briguglio and he said 'It's as bad as it gets.' I agree—". The second comment

6

occurred during the prosecutor's closing remarks, when Willis believed the prosecutor made a "send a message" remark to the jury to find Willis guilty and warn other criminals.

The first comment where the prosecutor stated, "I agree", in relation to Willis's comments to Detective Briguglio did not amount to an opinion on Willis's guilt and did not violate Willis's right to a fair trial. The comment when viewed with the totality of the evidence presented against Willis did not destroy Willis's right to a fair trial. The prosecution presented ample evidence to establish that Willis had a sexual relationship with the victim. The comments made by the prosecution had no impact on the outcome of the trial and were not so harmful as to deny Willis a right to a fair trial.

The second comment where Willis believed the prosecution asked the jury to "send a message" also fails on the merits. The prosecutor stated during rebuttal argument that the jury should, "Let him know what he did--", to which an objection was promptly made by defense counsel (Dkt #18, Ex: 1G, pg. 652). The judge sustained the objection and the prosecutor was unable to finish the comment. This comment could not have impacted the jury in a manner that would make them so biased it violated Willis's due process. Lastly, in light of the evidence presented before the jury, Willis cannot claim that the second comment made by the prosecution influenced the jurors to the point where his right to a fair trial was destroyed.

**Counsel's Failure to Argue Illegal Search and Seizure**

Willis argues his counsel was ineffective in failing to raise and argue illegal search and seizure with regard to the phone that Willis sent to the victim before his arrest. Willis contends the Pinellas County Sheriff's Office did not have the legal authority to seize the

cell phone Willis sent through the mail to the victim since it was his personal property and the Sheriff's Office never acquired a warrant to seize it (Dkt. #2, p. 11).

As the state post conviction court noted in *United States v. King*, although letters are generally protected from warrantless search and seizures by the Fourth Amendment "if a letter is sent to another, the sender's expectation of privacy ordinarily terminates upon delivery." *United States v. King*, 55 F.3d 1193, 1195-96 (6th Cir. 1996). The trial court found that Willis had sent the package to the victim, the victim and her father received it, and that the victim's consented to the Sheriff's office opening the package and examining the phone. (Dkt. #18, Ex. 7D, p.234-5). Willis no longer had a privacy interest in the package once it was delivered. Therefore, Willis's constitutional rights were not violated.

Willis contends in his reply (Dkt. #25), that while it was proper for the Sheriff's Office to seize the package, it did not have the authority to search its contents. Willis has mistakenly argued that the constitutional protection from searches afforded to letters and packages that are in transit and not delivered is similarly afforded to letters and packages that have already been delivered. This line of reasoning is contrary to the established case law that a sender's expectation of privacy ends once the package has been delivered. *Id.*

It is not ineffective counsel not to file non-meritorious claims. *See, Chandler v. Moore*, 240 F. 3d 907, 913-4 (not ineffective counsel not to raise non-meritorious claims). Based on the facts found by the state court and the case law, Willis's claim for ineffective counsel for failing to argue illegal search and seizure must fail.

**Trial Court Erred in Denying Pretrial Motion to Suppress**

Willis claims the state trial court erred by denying his motion to suppress statements he made while he was in custody of the Pinellas County Sheriff's Office. Willis claims that the waiver of his Miranda rights was not voluntarily, knowingly, and intelligently made, because he was sleep deprived, was in a state of shock, and English is not his native language. (Dkt. #2 p. 13).

First, this claim is different from the one made to the post-conviction court. In his rule 3.850 motion, Willis alleged ineffectiveness of counsel for failure to challenge the voluntariness of his confession. The post-conviction court found that the record from the trial court rebutted the claim made by Willis because his counsel did, in fact, challenge the voluntariness of his confession. (Dkt. #18, Ex. 7). Therefore, this new claim that his federal constitutional rights were violated because his *Miranda* consent was invalid is unexhausted.

In order to satisfy the exhaustion requirement, the petitioner must "fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted); *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005). This latest contention made by Willis is unexhausted and is now procedurally barred from being heard by this Court because Willis deprived the state courts the opportunity to first consider and rule upon the matter.

Even if Willis's claim were allowed to move forward, Willis fails to show that he did not knowingly, intelligently, and voluntarily waive his Miranda rights. The trial court

9

took evidence on this issue including viewing the videotape of the interview. The trial court made a finding of fact that Willis knowingly waived his Miranda rights and voluntarily confessed to the crimes with which he was charged (Dkt. #18, Ex. 7C). This Court has reviewed the record and concludes that the record supports this finding. Willis has failed to show this Court that the findings of the state court were unsupported by the record or that it made an unreasonable application of clearly established Federal law.

**Conclusion**

For the reasons set forth above, all of Petitioner's claims are procedurally barred or without merit and will be denied.

It is therefore ORDERED AND ADJUDGED that:

1.     The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2.     The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability.  *Id.*  "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id*. at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

DONE AND ORDERED this 19th day of May, 2014, at Tampa, Florida.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

F:\Docs\2013\13-cv-560 deny 2254.docx